IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CRIMINAL ACTION NO. 2:20-cr-00199

BRANDON COOPER,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant's *Motion to Suppress Evidence* (Document 47), the *Response of United States to Defendant's Motion to Suppress Evidence* (Document 51), and all attached exhibits. The Defendant seeks to suppress all evidence resulting from the search of his residence on October 9, 2020. For the reasons stated herein, the Court finds that the motion should be granted.

**FACTS[1]**

Officer M.A. Dolin, a Task Force Officer with the Drug Enforcement Agency (DEA) applied for a search warrant of 211 Stuart Street in Charleston, West Virginia, on October 1, 2020. The warrant application was based on reports from a source of information (SOI), who informed Officer Dolin that a black man had recently moved into the apartment. The SOI noticed a lot of people making short visits to the residence. Officer Dolin conducted a trash pull. Trash bags

---

1 The relevant facts are drawn from the records supplied by the parties. Because the issue centers on the adequacy of the warrant application, not the accuracy of any information, the Court finds that a hearing would not assist in resolution of the motion.

outside the residence contained five plastic bags with the corners removed, three plastic bag corners, and two plastic straws, all of which Officer Dolin found consistent with drug use and/or packaging.

Officer Dolin provided the following probable cause narrative in an affidavit:

> This investigation began in September of 2020, after TFO Dolin received information from a source of information (SOI) that there was suspicious activity at a residence located at 213 Stuart Street, St. Albans, WV. The SOI advised TFO Dolin there was a black male that had recently moved into the apartment building and since that time, there had been a high amount of people coming and going from the residence. The SOI went on to say, the individuals would enter the residence for very short periods of time before leaving again. Based on your affiant's experience, this type of activity is consistent with narcotics transactions being conducted. The SOI also provided TFO Dolin with information that the resident was driving a black Jeep Liberty SUV.
>
> By conducting surveillance of the residence, TFO Dolin was able to verify there was in fact a black Jeep Liberty bearing WV registration 32M394 parked in front of that residence on several occasions. After running an inquiry on the vehicle through the West Virginia DMV, TFO Dolin discovered the vehicle was registered to a Larry Joshua Glispie.
>
> On Thursday October 1, 2020, TFO Dolin conducted a trash pull investigation at Mr. Glispie's residence.[2] It was previously determined that this was the scheduled pick up day for this address. Investigators observed and collected one clear plastic garbage bag and one black plastic garbage bag. Upon processing the bags, TFO Dolin found that the bags contained evidence of drug distribution and use. Five plastic bags with the corners removed were located inside the garbage bags, which is a typical method used by narcotics traffickers to package drugs for resale. There were three plastic bag corners and two plastic straws, which show that narcotics are likely present in the residence and being used.

---

2 The association of the residence with Mr. Glispie appears to be based entirely on the vehicle registration. The Defendant had recently purchased the vehicle but had not updated the registration.

(Warrant App. at 5–6, att'd as Defendant's Ex. A.) The remainder of the affidavit consists of a conclusion expressing Officer Dolin's suspicions about criminal activity in the residence but includes no further factual support. The warrant application sought the following:

> Any US currency, marijuana, prescription pills, crack cocaine, heroin, methamphetamine and other controlled substances, other proceeds from illegal drug sales, records, scales, packaging, mobile telephones, computers, firearms, stolen articles or property. Also, any individuals on scene at the time of the execution of the search warrant to include their person. Any and all dangerous weapons and surveillance equipment from 211 Stuart Street.

(Warrant App. at 2.) During the Defendant's preliminary hearing, Officer Dolin testified that no drugs were found during the trash pull, even in trace amounts.

A Kanawha County Magistrate Judge issued a search warrant based on the application and Officer Dolin's affidavit on October 3, 2020. The officers executed the search on October 9, 2020. They found and seized a loaded Glock 26 9mm handgun, a loaded Glock 17 9 mm handgun with a drum magazine, a loaded Century Arms International WASR-10 7.62x39 semi-automatic assault rifle, ammunition, steel plated ballistic body armor, marijuana in various forms, a heat-sealing machine, digital scales, plastic bags, and plastic tubular containers.

During the execution of the warrant, Officer Dolin and two other DEA agents spoke with Mr. Cooper. In a recorded *Mirandized* statement, he admitted that he was a convicted felon, that he owned the three guns for protection as a result of a conflict with people he described as "shooters," and that he had previous gang affiliation. (United States' Resp. at 3.)

## DISCUSSION

The Defendant argues that the Magistrate Judge did not have sufficient evidence to find probable cause to issue the warrant. He emphasizes that trash pulls are to be viewed with some

circumspection, and the trash pull here did not uncover any drugs. He also argues that the tip from the source of information was limited to seeing visitors enter and leave the residence but did not include any insider information about activities inside the house. He also notes that the affidavit contained no information about the informant's credibility or reliability. The Defendant further argues that the good-faith exception to the exclusionary rule should not apply because "the affidavit in this case was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" (Def.'s Mot. at 9, quoting *United States v. Leon*, 468 U.S. 897, 923 (1984.))

The United States argues that the warrant was supported by probable cause and the search should be upheld. It points to the tip "about suspicious drug activity at a particular residence," Officer Dolin's efforts to verify that an individual and vehicle matching the description provided by the SOI were at the address, and the trash pull "that provided evidence of drug distribution." (United States Resp. at 5.) It argues that the SOI's credibility was supported by Officer Dolin's investigation in which he "observed the high amount of traffic in and out of 211 Stuart Street" and verified the presence of the described vehicle.[3] (*Id.* at 6.) Even if the Court finds that there was not probable cause for the search, the United States argues that the good faith exception is applicable.

The Fourth Amendment requires that search warrants be issued only upon a showing of probable cause. *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996). Courts and magistrates apply a totality of the circumstances approach to determining whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place" to support

---

3 Officer Dolin's warrant affidavit confirms that he conducted surveillance and observed the vehicle parked at the residence but does *not* state that he personally observed high traffic to the residence or any other suspicious activity.

4

issuance of a warrant. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). In considering statements from informants, the basis of the assertions, the informant's reliability, the detail provided, any suspect motivation, and the informant's history may all be considered. *Id.* at 233-34. Reviewing courts considering a motion to suppress afford a magistrate's decision great deference, considering only "whether the magistrate had a substantial basis for the decision." *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993). "In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993).

      The Fourth Circuit has addressed both informant tips and trash pulls. In *United States v. Wilhelm*, the court found that an affidavit describing a tip regarding the sale and packaging of marijuana in a residence, assertedly based on the informant's personal observations, "did not adequately support the magistrate's finding of probable case" because it included only "conclusory descriptions apparently designed to establish the informant's trustworthiness." *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996). The court explained that "[u]pholding this warrant would ratify police use of an unknown, unproven informant—with little or no corroboration—to justify searching someone's home. The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." *Id.* (further noting that the only corroboration of the informant's statements made by the officer was confirming that the directions to the residence were accurate, together with noting the accuracy of the informant's description of the appearance of marijuana). The Fourth Circuit further declined to apply the good-faith exception to the exclusionary rule, finding that the "bare bones" affidavit

5

"did not provide the magistrate with a substantial basis for determining the existence of probable cause" and that "the state magistrate appears to have acted as a rubber stamp." *Id.* at 121-23.

More recently, the Fourth Circuit addressed the limitations of evidence uncovered in trash pulls to support a broad search of a residence. The court found that "three empty packs of rolling papers, a piece of mail addressed to the home, and three marijuana stems" found "[a]mong four trash bags" was insufficient to support a finding of probable cause. *United States v. Lyles*, 910 F.3d 787, 793 (4th Cir. 2018). The court noted that "the open and sundry nature of trash requires that it be viewed with at least modest circumspection." *Id.* at 792 (explaining that evidence could be easily planted in trash, and guests may leave items in the trash). The Fourth Circuit emphasized that the warrant issued in *Lyles* was quite broad in comparison to the slight evidence of a minor offense. *Id.* at 795–96. The Court again rejected application of the good faith exception to the exclusionary rule, holding that "objectively speaking, what transpired here is not acceptable. What we have before us is a flimsy trash pull that produced scant evidence of a marginal offense but that nonetheless served to justify the indiscriminate rummaging through a household." *Id.* at 797.

The United States cites cases in which the Fourth Circuit "ruled that the corroboration of a tip through the discovery of drug trafficking evidence during a trash pull supports probable cause for a search warrant." *United States v. Saunders*, 828 F. App'x 900, 903 (4th Cir. 2020) (citing *United States v. Gary*, 528 F.3d 324, 327-28 (4th Cir. 2008)). In both *Saunders* and *Gary*, police received a tip alleging drug activity at a specific address, conducted a trash pull, and discovered plastic bags and/or other packaging with drug residue. *Saunders* 828 F. App'x at 903; *Gary*, 528 F.3d at 326.

In contrast, Officer Dolin's affidavit contained *no* information directly related to drugs. He explained why, in his experience, many people visiting a residence for brief periods is consistent with drug trafficking, that plastic bags with the corners cut off are used in drug packaging, that plastic straws are indicative of drug use, and that his experience led him to believe that the residence would contain evidence of drug trafficking. However, the uncorroborated tip from the unidentified source did not contain any information indicating knowledge that drugs were present or that the SOI observed a crime. The individual told Officer Dolin that a black man recently moved into the residence, and "since that time, there had been a high amount of people coming and going from the residence" who "would enter the residence for very short periods of time and leave again." (Warrant App. at 5.)[4] The trash pull likewise did not uncover even drug residue or the marijuana stems found in *Lyles*. Unlike prior cases rejecting motions to suppress, no one reported seeing drugs, no one observed drug transactions, and no drugs or drug residue were found in the trash. In short, there is nothing in the affidavit to support an objective finding that evidence of drug trafficking would likely be found in the home.

The evidence supporting probable cause in this case, assuming its accuracy and reliability, consists of (a) an unspecified "high" number of people visiting for very short periods during an unspecified time frame and (b) trash containing five plastic bags with the corners removed, three plastic bag corners, and two plastic straws. Both pieces of evidence are consistent with any number of legitimate activities and explanations, as well as drug trafficking.[5] Even taken in

---

4 The Defendant presumed the reliability of the SOI. Because the lack of evidence of criminal activity is sufficient to resolve the motion to suppress, there is no need to delve into an analysis of the lack of evidence of the SOI's reliability. However, particularly in the absence of direct evidence of criminal activity, a tip that begins by informing the officer that a Black man recently moved to the area should raise a red flag. There is a risk that the informant's suspicions are based more on an assumption that a Black man is a criminal rather than the inference that heavy traffic with short visits must be drug activity.

5 Particularly soon after moving to a new residence, a person might have frequent brief visitors to assist in setting up

combination, this information does not come close to providing a substantial basis to find a fair probability that the home contained contraband or evidence of a crime. This type of evidence might be useful to *corroborate* a tip that a suspect is engaged in drug trafficking, but it is insufficient on its own. Thus, the Court finds that the warrant was not supported by probable cause, and the magistrate did not have a substantial basis to support the probable cause finding and issuance of the warrant.

The warrant application, as a whole, reflects the insufficiency of the preliminary investigation. At one point, the affidavit lists the address as 213 Stuart St., rather than 211.[6] The suspect is identified throughout as Larry Glispie, based solely on the (outdated) registration of the vehicle parked at the residence. Within the description of Officer Dolin's experience and qualifications, he asserts that there is probable cause to believe violations have been, are being, and will be committed by "Reginald Douglas" and/or unknown persons; it is not clear who Reginald Douglas may be. (Warrant App. at 4.) At the beginning of the affidavit, the residence is described as a "two story tan brick apartment building (*Id.*), and at the end, it is described as a "white two-story stucco style residence." (*Id.* at 8.) These errors are suggestive of the absence of a good faith effort to gather and verify information prior to seeking a warrant and searching a home.

---

the residence, connecting services, or simply seeing a friend's new house. People sell household goods and other legal items on social networking sites, which might result in frequent brief guests. As a result of the pandemic, many families have converted events that traditionally involve a group party and exchange of gifts to serial individual brief stops to drop off gifts. Plastic bags with the corners cut may be used in baking, decorating, crafting, or gardening projects, for example. Plastic straws, of course, are often used to drink beverages. These are all speculative potential explanations for the facts contained in the affidavit—but offered to show that Officer Dolin's explanation that these facts mean the residence is being used for drug trafficking is equally speculative.

6 Although this sort of error may appear minor, such mistakes can lead to searches of the wrong residence with potentially tragic results. It does not impact the probable cause analysis but is worth emphasizing the importance of ensuring accuracy in warrants.

Regardless of the sloppiness of the warrant application, the information contained in the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (quoting *Brown v. Illinois*, 442 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). An officer immersed in drug crime investigations may subjectively believe that every plastic straw, brief visit, or cornerless plastic bag correlates to a drug offense, but "*Leon*'s standard is ultimately an 'objective' one," and such belief is not objectively reasonable. *United States v. Lyles*, 910 F.3d 787, 797 (4th Cir. 2018). Therefore, the Court finds that the good faith exception to the exclusionary rule is not applicable, and the Defendant's motion to suppress should be granted.[7]

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's *Motion to Suppress Evidence* (Document 47) be **GRANTED** and that all evidence obtained as a result of the October 9, 2020 search of 211 Stuart Street, St. Albans, West Virginia, shall be **SUPPRESSED** in this matter.

---

7 The United States suggests that any challenge to Mr. Cooper's *Mirandized* statement, given at his home while the search was ongoing, is waived because the Defendant did not specifically seek to suppress the statement. As requested, the Court has granted the Defendant's motion to suppress *all* evidence obtained as a result of the unlawful search.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: February 5, 2021

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA